Yes, Robert Gerstein for Mr. Shalant. Thank you. The question here is whether a federal court can decide a question of disbarment entirely on the basis of deference to the state bar decision when there is a question of federal constitutional law at the heart of the matter. What's the question? The question, Your Honor, is whether the statute, the violation of which is the principal basis for the disbarment action, was in this context sufficiently clear to give an attorney guidance as to whether he was violating it or not. And we contend that this is a situation in which there was no such clarity. What we have here is a statute. It is a California statute called the MICRA Act, which limits contingency fees in matters dealing with medical malpractice. Does the statute permit a nonrefundable fee in addition to the maximum contingency? Your Honor, the statute You want to start with a yes or no? It does not. It does not prohibit that, Your Honor. Tell us why. It is silent on the matter. It references only contingency fees. What we have in this case is a contingency fee, which was clearly within the statutory limits. There was this nonrefundable retainer in addition to that as part of the contract, but the retainer was to be credited to the contingency amounts. It was not in addition to them. It did not add to them. Well, that wasn't what the California court found was. It wasn't until it didn't find that there was a contingency and a flat fee on top of that. But, well. Yes or no? It said that the flat fee was in addition to the contingency, but, in fact, the agreement states that it is to be credited to the contingency. Isn't that something that really it's up to the state court to really decide whether that's a violation or not? Here they decide the violation, and aren't we bombed by it? Well, Your Honor, once again, I would say if there is a question of federal constitutional law here, this Court, neither this Court nor the district court can be bound by the decisions of the state court with regard to the constitutional question. Our contention here is that it is an arguable matter. It is a matter on which people, reasonable attorneys, can disagree as to whether the statute was applicable and violated here. What does the Yates case tell us, if anything? The Yates case, Your Honor, does say that if you have a carve-out of an aspect of the case, there it was the appellate aspect of the case, and an additional fee is being charged for that in addition to the contingency amounts, that that violates the statute. The way I understand this case, and correct me if I'm wrong, the California Bar proceeded on a theory that under Yates the fee was illegal because 6146 doesn't allow a contingency fee agreement in medical malcases to provide for a nonrefundable fee in addition to the statutory maximum contingent fee. Isn't that exactly what they said? I'm trying to quote it. That's, if not an exact quote, it's quite close, Your Honor. But. And didn't the California Bar conclude that under Yates your client made a mistake? Yes, Your Honor. But. Well, why is that so unclear? The Yates case was decided in 1991. Does that not precede your client's problems with the California Bar? Yes, Your Honor. So you've got a California appellate decision in construing the statute in a way that makes your client's behavior a problem. Well, Your Honor, once again, we would argue that this was not like Yates, and that this was not a fee in addition to the contingency. The retainer amount was to be credited to the client. So it was not an addition. What we have in Yates is clearly the amounts allowed under MICRA plus an additional amount for the appellate representation. What we have here is the client providing an original retainer, which will be credited to the contingency fee, which will be taken out of any recovery. And show me the exact language you'd like me to read before I make my final decision on whether I agree with your interpretation. What's the language? You're paraphrasing, aren't you? The language of the retainer. Right. Show me the language that says what you just said. Mr. Chalant, may be better to ---- Well, if you're going to get up here and tell us that it says this, I'm asking you to show me where it says that.  Yes. Thank you, Your Honor. I just have to find the exact language here, if you'll allow me. You will pay $25,000 toward what is otherwise a contingent fee as set forth in the also enclosed retainer agreement. Yes. Thank you, Your Honor. This will be nonrefundable and will cover all services through trial, if the case goes that far, and also defending an appeal should we win and they benefit. Is that the language you're talking about? Yes. Yes. Toward a contingency fee. Thank you, Your Honor. You will pay $25,000, thank you, Your Honor, toward a contingency fee. That is the language, Your Honor. So that's the secret word, towards? Well, it's not an addition. It is not an addition to the contingency fee. It is an amount that is going to be credited toward the contingency fee. Thank you, Your Honor. And there is other language as well. Mr. Schlant just gave me the agreement. Credit is to be allowed for all payments by client made pursuant to the modified proposal. So it is made clear that the amount of the retainer will be credited to the contingency fee. Are Federal courts entitled to make an independent judgment of the ethical behavior of lawyers that appear before you? Certainly, they should be, Your Honor. Yes, I should say so. Could we, irrespective of the propriety of the interpretation of the agreement here or the reading, the proper reading of Yates, conclude that your client's past disciplinary history combined with his behavior toward the client in this case makes him unsuitable for appearing in Federal court? Your Honor, we would disagree, of course, with that judgment. But if the question is whether this Court has independent review authority as to its bar, I think, Your Honor, the answer must be yes. So we could say, irrespective of what the agreement provides, whether it's credited or not, and however one reads Yates, we find that an attorney with four prior disciplinary proceedings. Do I have that right? Yes, Your Honor. And if the court finds that an attorney with four prior disciplinary proceedings who files a lawsuit without his client's knowledge, I'm correct about that, aren't I? I believe that's accurate. And who threatens to withdraw a day or two before his client's deposition is being taken, is that correct? That there is evidence in the record. Makes a demand for $10 million when the case settles for $500,000? Yes, Your Honor. Okay. Thank you. You're almost out of time. I wanted to ask one question. Yes. Because we're pretty weird. It's a very high hill to climb when the State is disbarred. You made some claims here that the State really didn't do right by your client. Is there any way that you can go back to the State of California and ask for some reconsideration? No, not at this time, Your Honor. But let me just ---- No way. No. That's right, Your Honor. But let me just say this. If this Court is taking a different view, that is to say if this Court is not going to decide simply to affirm the decision of the district court on the basis that it was made, but rather take a different perspective as the ---- Then a remand might be in order. We're suggesting that a remand would certainly be in order, Your Honor, yes. And that ---- Because the decision at issue here today is a decision by the central district of California to debar your client, correct? Yes, Your Honor. Okay. We've taken you over your allotted time with our questions. We'll hear from Mr. Shlont. Thank you. Thank you, Your Honors, and good morning. Good morning. Your Honor, I ask three questions, and that is the attorney filed a lawsuit without the client's consent. The facts are totally different than that. That wasn't my question. Without the client's knowledge. Yes. It was done with the client's knowledge. How about the notice of claim? The notice of claim was sent ---- that's what mentioned the $10 million, not the lawsuit. The lawsuit had no amount in it. All of that ---- Did you file a notice of claim prior to notifying your client? No, I did not. Okay. And also ---- How long your client's deposition was scheduled at one point after some continuances? Yes. And the deposition went through and was completed in the morning and the afternoon, and the client 10 weeks later sent in the retainer agreement signed after consulting with counsel. There was no withdrawal. Representation continued. The record is very clear about that. And, in fact, the client was asked during the State Bar proceeding, Mr. Smith, if you said you were being coerced, why did you then sign the retainer agreement 10 weeks later and also get advice from your counsel in the interim? And he said, well, Mr. Shaw, once I give my word that I'm going to sign the retainer and agree to it, I keep my word. And then he also said it's like going to an auto mechanic and you feel the auto mechanic is going to rip you off. Well, why go to the next one? Because he's probably going to do the same thing again. I mean, the whole thing is such an absurdity. Didn't the State Bar hearing officer find Mr. Smith credible and you not? The answer is yes. But he also said the law is murky, and he said that twice. So if there's a disputed view of the facts of the record before the hearing officer, should we or should we not give deference to those findings? You know, my interpretation of this law. That's not the question. The question is facts. I think the answer is you give deference, but the evidence does not even support that. In other words, you could give deference. However, the evidence seems so overwhelming based upon also what I just cited to you in terms of Smith's own testimony. Well, if you said black and Mr. Smith said white and the hearing officer said, I believe Smith, do we examine what you said? Well, I think you need to in terms of making the decisions as to grave injustice and other factors, whether or not they exist. And to put that in context with Smith said, Sheline said that if you don't sign the retainer, I'm going to get off the case and I'm coercing you. The fact was that the deposition went through, the client signed the retainer 10 weeks later, and the case continued. And when did you first ask for an additional $25,000? That was asked three days before the deposition. The proposal was made. It's even called a modified proposal. And he didn't have to accept it. He didn't have to sign it. He could have dropped off the case. It was never a demand that he pay a dime more. He could have dropped off the case three days before his deposition was scheduled? No, after his deposition. There was no talk about dropping off. The evidence is, as Mr. Gerstein made clear in his briefing, that the client said these things, but the deposition proceeded. There was never any discussion about Sheline or me dropping off from representing him. And I was still the attorney 10 weeks later when he signed the retainer agreement. And then at some point down the road after doing six depositions, proceeding with his case, even doing an appellate writ that the retainer provided, I didn't have to do, but I thought it was appropriate to do, and working hard on this case, that he got different counts, and they saw an opportunity to get back the $25,000. And, gentlemen, you asked a question before about Yates. Remember, Yates allowed, or at least they say will leave for another day, whether there can be two fees. If he would have gotten outside counsel, for example, Ellis Harvest or some other law firm, they did not decide that he wouldn't pay the trial lawyer who did the case and pay the appellate counsel also. It's just that one lawyer could not charge two fees. In my retainer, it was clear that there, as far as a contingent fee, which is what 6146 specifies as to have limitations, the contingent fee, which is what the appellate counsel has to pay, would never have been a contingent fee if the recovery had been, for example, $50,000. And this is all hypothetical nonsense. The recovery was $500,000. The bar knew that all the time. But if it had been a $50,000 recovery, there would have been no contingent fee, because the $25,000 would have been more than the fee, and you're allowed to charge an hourly fee as much as you want within the limitations of being reasonable or a set fee for the case. There's no restriction on that. Can I ask you to hold for a second? The time is going up. They used the 10 minutes. Oh, you're over the 10 minutes? Yeah. Okay. You need to wind up. I notice that the clock is increasing now, and your combined time is over 10 minutes. You want to wind up, please? Yes, I will, Your Honor. Thank you for allowing me. I'm just saying 6146 deals with a contingent fee. There would have been no contingent fee by the terms of the retainer agreement, both documents. Under any circumstances could there have been a contingent fee, that is, a fee depending upon the case outcome, that would have exceeded micro. And I want to say one thing for you gentlemen to consider, Your Honors, and that is, not only was there this, the fee, but there was a commitment to take that case to trial all the way and pay all the expenses from it. If I had taken that $25,000 and called it just an advance against fees, against costs, nobody would have had a question. I realize I wouldn't have been able to take the fee into my account, but it was sort of irrelevant. I was committing myself to pay all the costs in trial, and that would have well exceeded $25,000. Perhaps I made a mistake by calling it a fee rather than an advance for costs, but I committed myself in the retainer agreement to pay all the costs, and anyone who tries a medical malpractice case, and I tried many, knows that those fees are high and it would have been more than $25,000. Okay. Thank you for your argument. The case just argued will be submitted for decision, and we'll proceed to the next case on the argument calendar, which is Davis v. Pacific Capital Bank. If counsel will come forward, please.
judges: Trott, Hawkins, Bright